UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
CONSUMER FINANCIAL PROTECTION
BUREAU and THE PEOPLE OF THE STATE
OF NEW YORK, by LETITIA JAMES,
Attorney General of the State of New York,

                              Plaintiffs,

            -v.-

CREDIT ACCEPTANCE CORPORATION,
                              Defendant.
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/7/2023

23 Civ. 00038 (JHR)

MEMORANDUM OPINION & ORDER

JENNIFER H. REARDEN, District Judge:

On January 13, 2023, Defendant Credit Acceptance Corporation moved to stay this action pending the U.S. Supreme Court's decision in *Consumer Financial Protection Bureau v. Community Financial Services Association of America, Ltd.*, No. 22-448 ("*CFSA*"). ECF No. 18 (Mot.). Plaintiffs Consumer Financial Protection Bureau (the "CFPB") and the New York State Attorney General (the "OAG") oppose Defendant's Motion. ECF No. 20 (Opp.). For the reasons set forth below, Defendant's motion is GRANTED.

## I.   BACKGROUND

The CFPB and the OAG filed this action on January 4, 2023 pursuant to the Consumer Financial Protection Act of 2010 ("CFPA") and New York law. ECF No. 1 (Compl.). The CFPB and the OAG bring three of eight causes of action jointly under the CFPA, with the OAG solely alleging the remaining five causes of action under New York consumer protection laws and the Martin Act, N.Y. Gen. Bus. Law § 352 *et seq. Id.* ¶¶ 171-226. Underlying all eight claims are allegations that Defendant makes predatory auto loans to vulnerable consumers throughout the United States, including in New York, by, *inter alia*, saddling them with exorbitant interest rates

and add-on products they cannot afford, while incentivizing auto dealers to sell cars at inflated prices.  *See*, *e.g.*, *id.* ¶¶ 1-13.

Defendant argues that "[t]he constitutional questions raised in *CFSA* go directly to whether the CFPB may prosecute this action and, if the Fifth Circuit decision at issue in *CFSA* is affirmed, the CFPB's claims" in the instant case should be dismissed.  Mot. 1.  The essential question in *CFSA* is whether the Fifth Circuit correctly held that the CFPB's statutory funding mechanism violates the Constitution's Appropriations Clause, U.S. Const. art. I, § 9, cl. 7.  *See* Petition for Writ of Certiorari ("Petition") at 10, *CFSA*, 143 S. Ct. 978 (2023) (No. 22-448) (mem.).  The Petition filed by the CFPB, which was granted on February 27, 2023, asserts that the Fifth Circuit's decision "calls into question virtually every action the CFPB has taken in the 12 years since it was created" and will "frustrate[]" the CFPB's ability to "administer[ ] and enforc[e] consumer financial protection laws."  *Id.* at 10, 29.

On March 14, 2023, Defendant moved to dismiss the CFPB's claims on the basis that, *inter alia*, the CFPB's funding mechanism is unconstitutional under the Appropriations Clause.  ECF No. 35 (Def.'s Br.) at 16-17.[1]  That motion is now fully briefed, and amicus briefs have been filed in support of Defendant's motion and Plaintiffs' opposition, respectively.  *See* ECF Nos. 52, 53, 57, 58.[2]  Defendant argues that a stay would avoid unnecessary litigation concerning "soon-to-be-settled constitutional issues" before the Supreme Court in *CFSA*.  Mot. 4.  Defendant also

---

[1] Defendant also seeks dismissal of the OAG's claims, including claims raised jointly by the OAG and the CFPB.  Def.'s Br. 17-50.

[2] On March 13, 2023, the Court granted the parties' joint request, submitted while the motion to stay was pending, to approve the parties' proposed schedule for briefing the motion to dismiss and to file excess pages.  ECF No. 32.  Even though Defendant's motion to dismiss is now fully submitted, "a court has inherent authority to stay an action, and that authority may be exercised at any appropriate stage of the proceedings."  *Readick v. Avis Budget Grp.*, No. 12-CV-3988 (PGG), 2014 WL 1683799, at *6 (S.D.N.Y. Apr. 28, 2014).  "Given that this case is in its initial stages, and that no discovery has taken place," this "is an appropriate point to grant a stay."  *Id.*

maintains that continued litigation would create uncertainty as to whether, and how, discovery (among other aspects of the case) could be limited to claims asserted by the OAG. *Id.* at 5. Finally, Defendant contends that proceeding with this lawsuit under current circumstances would lead to "duplication" and "extreme inefficiencies" due to the substantial overlap between the CFPB's and the OAG's claims. *Id.*; *see* ECF No. 25 (Def.'s Reply) at 2. Defendant points to *CFPB v. Moneygram International, Inc.*, an action in this District brought by the CFPB and the OAG—the same plaintiffs as here—that has been stayed pending the Supreme Court's decision in *CFSA*. *See* Mot. 4 (citing No. 22-CV-03256 (KPF), 2022 WL 17547438 (S.D.N.Y. Dec. 9, 2022) (staying action pending ruling on the Petition in *CFSA*)); No. 22-CV-03256, ECF No. 54 (S.D.N.Y. Mar. 2, 2023) (extending stay following the Supreme Court's grant of the Petition).

Plaintiffs oppose a stay on the ground that the CFPB's funding does not bear on the OAG's ability to pursue all eight causes of action—which, according to Plaintiffs, distinguishes the instant case from *Moneygram*. Opp. 1, 3. Moreover, Plaintiffs dispute Defendant's judicial efficiency concerns on the basis that the scope of the alleged CFPA violations "are the same inside and outside [of] New York," and "[a]ny concern about discovery specific to non-New York consumers . . . could easily be addressed by the parties" without a stay. *Id.* at 3-4. Plaintiffs also maintain that a stay would harm the public's interest in "vigorous enforcement of consumer protection laws." *Id.* at 4 (quoting *John Doe Co. v. CFPB*, 235 F. Supp. 3d 194, 205 (D.D.C. 2017)). Finally, Plaintiffs assert that Defendant will not be harmed absent a stay, as it will only incur the "normal costs of litigation." *Id.* at 5.

The parties have filed several letters on developments relating to *CFSA* and other decisions addressing the constitutional challenge therein. *See* ECF Nos. 28, 29, 30, 42, 43, 46, 49, 50, 60, 61. On March 23, 2023, the Second Circuit rejected a challenge to the constitutionality

of the CFPB's funding structure under the Appropriations Clause. *See CFPB v. Law Offices of Crystal Moroney, P.C.*, 63 F.4th 174, 181-83 (2d Cir. 2023). On April 7, 2023, in light of the Second Circuit's decision in *Crystal Moroney* and the Supreme Court's grant of certiorari in *CFSA*, the *Moneygram* court denied Plaintiffs' request to lift the stay in that case. *See* No. 22-CV-03256, ECF No. 57 at 4-5 (S.D.N.Y. Apr. 7, 2023) ("Because the Supreme Court is now guaranteed to hear *CFSA* and may resolve the case early in its term, the Court still believes that the interests of the parties, the public, and the courts favor maintaining the stay in this case."). On June 28, 2023, the Second Circuit stayed its mandate in *Crystal Moroney* pending the filing of a petition of a writ of certiorari. *See* No. 20-3471, ECF No. 165 (2d Cir. June 28, 2023). Argument is being heard on October 3, 2023, and the Supreme Court is expected to issue a decision in its 2024 term. *See CFSA*, No. 22-448; *see also* ECF No. 29; *Moneygram*, No. 22-CV-03256, ECF No. 57 at 4.

## II.  LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). In determining whether to enter a stay, "courts in this [D]istrict consider five factors: '(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.'" *Loftus v. Signpost Inc.*, 464 F. Supp. 3d 524, 526 (S.D.N.Y. 2020) (quoting *Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996)). "These factors are to be balanced, with the principal objective being

the avoidance of unfair prejudice." *Am. Steamship Owners Mut. Prot. & Indem. Ass'n v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 482 (S.D.N.Y. 2007), *aff'd in part, vacated in part sub nom. N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102 (2d Cir. 2010). "In addition, a court may also properly exercise its staying power when a higher court is close to settling an important issue of law bearing on the action." *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012). This includes cases where "the issues . . . are [not] necessarily controlling on the action before the court." *Id.* (quoting *Goldstein v. Time Warner N.Y.C. Cable Grp.*, 3 F. Supp. 2d 423, 438 (S.D.N.Y. 1998)).

### III.   DISCUSSION

The aforementioned factors favor staying this action pending resolution of the Supreme Court's decision in *CFSA*. First, although a stay will delay Plaintiffs' litigation, it will not "unduly prejudice" Plaintiffs and may, in fact, "advance [their] interest[s] by providing the Court with guidance as to the quality, nature, and validity of their claims." *In re MPM Silicones, L.L.C.*, No. 15-CV-2280 (NSR), 2017 WL 4386378, at *2 (S.D.N.Y. Oct. 2, 2017). As to the second factor, Defendant persuasively argues that its "interests" are met by a stay. *Loftus*, 464 F. Supp. 3d at 526; *see* Mot. 4-5. Awaiting the Supreme Court's resolution in *CFSA* will clarify the legal issues here and may help Defendant avoid unnecessary litigation costs. *See, e.g.*, *In re MPM Silicones*, 2017 WL 4386378, at *2; *see also, e.g.*, *Readick*, 2014 WL 1683799, at *5 (finding defendant would be prejudiced by continued litigation of action, where failure to grant a stay would result in "potentially duplicative and costly discovery").

Third, a stay is "in the interests of the court[]." *Loftus*, 464 F. Supp. 3d at 526. "Postponing the final disposition of a case pending an upcoming decision by the United States Supreme Court is a practice exercised by the Second Circuit in the interest of judicial economy."

*Jugmohan v. Zola*, No. 98-CV-1509 (DAB), 2000 WL 222186, at *5 (S.D.N.Y. Feb. 25, 2000). A stay will "best serve the interests of the courts by promoting judicial efficiency" and will "minimize[e] the possibility of conflicts between different courts." *Catskill Mountains Chapter of Trout Unlimited, Inc. v. U.S. E.P.A.*, 630 F. Supp. 2d 295, 304 (S.D.N.Y. 2009) (quoting *N.Y. Power Auth. v. United States*, 42 Fed. Cl. 795, 799 (Fed. Cl. 1999)). A stay is also warranted because the Supreme Court's decision "could contain guidance that would allow this litigation to proceed on a reasonable and efficient basis." *Loftus*, 464 F. Supp. 3d at 527; *see Sikhs*, 893 F. Supp. 2d at 622 ("[I]t 'would be an inefficient use of time and resources of the court and the parties to proceed in light of a pending U.S. Supreme Court decision,' particularly where that decision "'may not settle every question of fact and law' before this Court, 'but in all likelihood it will settle many and simplify them all.'" (quoting *In re Literary Works in Elec. Databases Copyright Litig.*, No. 00-CV-6049 (GBD), 2001 WL 204212, at *3 (S.D.N.Y. Mar. 1, 2001))).

If the Court denied Defendant's request for a stay and adjudicated the pending motion to dismiss, it would need to decide Defendant's constitutional challenge to the CFPB's authority to pass and enforce the laws directly implicated by the three federal claims in this case.[3] Plaintiffs state that the Court "could choose to defer ruling on that issue to await further developments" in the Supreme Court case, "while allowing the rest of this case," including discovery, "to proceed." Opp. 4. However, where, as here, a forthcoming decision in another action may dispose of at

---

[3] The Second Circuit's decision in *Crystal Moroney*, 63 F.4th at 181-83, does not change this analysis, as the Supreme Court ultimately will decide whether the CFPB's funding mechanism is unconstitutional. *See Kennedy v. Aegis Media Ams., Inc.*, No. 20-CV-3624 (GHW), 2021 WL 4077946, at *2 (S.D.N.Y. Sept. 7, 2021) (finding stay was warranted where the impact of a Second Circuit decision "may be temporary," as it was the Supreme Court "that [would] ultimately 'settl[e] an important issue of law bearing on the action'" (quoting *Sikhs*, 893 F. Supp. 2d at 622)).

least some of Plaintiffs' claims, proceeding with "discovery . . . will serve little or no purpose" and will not advance interests of judicial economy. *Readick*, 2014 WL 1683799, at *5; *see Loftus*, 464 F. Supp. 3d at 527 ("A stay . . . conserves judicial resources and avoids unnecessary expense for a cause of action that may ultimately be rendered moot.").

Although Plaintiffs suggest, without elaborating, that "[a]ny concern about discovery specific to non-New York consumers" implicating federal issues "could easily be addressed by the parties," Opp. 4, premature discovery potentially would be "duplicative and costly" in this case, *Readick*, 2014 WL 1683799, at *5. Plaintiffs concede that there is substantial factual and legal overlap among the New York and non-New York-specific causes of action (*see* Opp. at 3-4), each of which alleges that Defendant engaged in the same core deceptive auto lending practices, employed throughout the United States, in violating consumer protection laws. *Compare* Compl. ¶¶ 11, 171-187, 213-223 (Plaintiffs' federal consumer protection law claims), *with id.* ¶¶ 12, 188-212 (OAG's claims under N.Y. Exec. Law § 63(12) and N.Y. Gen. Bus. Law § 349), *and id.* ¶¶ 13, 224-226 (OAG's claim under the Martin Act, N.Y. Gen. Bus. Law § 352 *et seq.*).

Plaintiffs' argument that a stay would "needlessly postpone" this action "without benefit to judicial economy" because the question before the Supreme Court solely implicates the CFPB's authority and "has no bearing on [the OAG's] ability to pursue . . . its claims"—and, therefore, is distinguishable from *Moneygram*, 2022 WL 17547438—is misplaced. Opp. 3. As *Moneygram* and numerous other decisions in this Circuit make clear, a stay may be warranted even if all of "the issues in [a separate] proceeding[] are [not] necessarily controlling on the action before the court." *Moneygram*, 2022 WL 17547438, at *2 (quoting *Sikhs*, 893 F. Supp. 2d at 622). Instead, as in *Moneygram*, "the interests of the court[] and judicial efficiency would be served" by a stay

of this case, as "a potential Supreme Court decision may resolve or otherwise bear on important issues" implicated by Defendant's motion to dismiss. *Id.*; *see* No. 22-CV-03256, ECF No. 57 at 4 (finding that a "continued stay," rather than deciding defendants' motion to dismiss and allowing discovery to continue, was "the most efficient use of both the parties' and the Court's resources").

Finally, a stay is in "the interests of persons not parties to the civil litigation" and in "the public interest." *Loftus*, 464 F. Supp. 3d at 526. Proceeding with this case "could well lead to unnecessary litigation that is time-consuming for this court, as well as for any third parties" who might be impacted by it, including through unnecessary or inefficient discovery. *In re MPM Silicones*, 2017 WL 4386378, at *2; *see Heiser v. Deutsche Bank Tr. Co. Ams.*, No. 11-CV-1608 (AJN) (MHD), 2012 WL 2865485, at *5 (S.D.N.Y. July 10), *aff'd*, 2012 WL 5039065 (S.D.N.Y. Oct. 17, 2012) ("[C]onsiderations of judicial economy are frequently viewed as relevant to the public interest, and . . . they weigh against the investment of court resources that may prove to have been unnecessary."); *see, e.g.*, *Loftus*, 464 F. Supp. 3d at 527 (holding that stay was in the interests of third parties and the public, as it would avoid unnecessary litigation, including discovery). Plaintiffs' concern that a stay could impact consumers by creating the risk that "evidence will become stale" is mitigated by the parties' obligations to preserve potentially relevant documents and the likelihood that the stay will be of a relatively short duration. Opp. 5 (quoting *Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr.*, 490 F.3d 718, 724 (9th Cir. 2007)); *see Loftus*, 464 F. Supp. 3d at 527.[4]

---

[4] Plaintiffs' cases purportedly supporting the proposition that a stay would harm the public are unavailing. *See* Opp. at 4-5. In *John Doe Co.*, the court held that "the public would *not* be significantly affected" by a stay. 235 F. Supp. 3d at 206 (emphasis added). Meanwhile, in *Blue Cross & Blue Shield*, the stays challenged on appeal were "indefinite and expected to be lengthy," and "could easily last as long as" five or six years, or "even longer." 490 F.3d at 724.

Although Plaintiffs correctly note that the public has an interest in enforcement of consumer protection laws, Opp. 4, they do not deny that the Supreme Court's ruling could substantially impact their ability to proceed with this action. *See* Petition at 29, *CFSA*, 143 S. Ct. 978 (No. 22-448) (citing requests for dismissal and similar relief in enforcement cases) (asserting that holding the CFPB's funding mechanism unconstitutional would have "immense legal and practical significance," and "frustrate[]" the CFPB's ability to "administer[ ] and enforc[e] consumer financial protection laws"); Brief for New York et al. as Amici Curiae in Support of Petitioners at 16-17, *CFSA*, 143 S. Ct. 978 (No. 22-448) (citing *Moneygram*, 2022 WL 17547438) (contending that "[t]he States and their residents could stand to lose the benefit of the CFPB's critical enforcement, regulatory, and informational functions if the decision below stands"). Any potential harm to the public caused by delaying this action is outweighed by the benefit to consumers in proceeding in a streamlined fashion. *See, e.g.*, *Heiser*, 2012 WL 2865485, at *5 (holding that a stay "would not amount to a denial" of the rights of terrorism victims and of the public's interest in deterring future attacks but would instead "facilitate the streamlining of th[e] case, effectively advancing justice for . . . victims").

---

Here, Plaintiffs assert that any stay likely will last, at the latest, until the end of the Supreme Court's 2024 term.  *See* ECF No. 29.

## IV. CONCLUSION

The Clerk of Court is directed to mark this case as STAYED and to terminate ECF No. 18. By the earlier of November 3, 2023 or one week after a major development in the *CFSA* case, the parties shall file a joint letter updating the Court.

SO ORDERED.

Dated: August 7, 2023
       New York, New York

*[signature]*
JENNIFER H. REARDEN
United States District Judge